**Jasmine AZIMA, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. 04–93–00438–CV.**

Court of Appeals of Texas,
San Antonio.

Sept. 28, 1994.

---

1. Nu-Way did file a motion in limine to exclude mention of such fact, but the trial court overruled it as to that fact.

Charles A. Nicholson, Roger G. Bresnahan, Law Offices of Pat Maloney, P.C., San Antonio, for appellant.

Cathy J. Sheehan, Nancy L. Farrer, Plunkett, Gibson & Allen, Inc., San Antonio, for appellee.

Before BUTTS, PEEPLES and HARDBERGER, JJ.

HARDBERGER, Justice.

This is an uninsured motorist insurance case. Jasmine Azima was in an accident with Sturdivant, an uninsured motorist. Her insurance policy with State Farm, her insurer, required the insurer's written consent to sue the uninsured motorist before a judgment against the motorist would bind State Farm. Azima claims to have obtained that consent before she sued Sturdivant in a separate lawsuit. That lawsuit culminated in a $1,000,000 default judgment. Azima presented the judgment to State Farm and demanded payment of the policy limits of $100,000 under the underinsured motorist clause. State Farm refused to pay, claiming Azima never got State Farm's written consent to sue Sturdivant. Azima then filed this breach of contract action against State Farm.

The primary issue is whether she got written consent from State Farm, the insurance company, before suing the uninsured motorist.[1] Azima claims a letter from State Farm gave her permission to sue Sturdivant. The trial court excluded the letter from evidence. State Farm, as appellee, contends the trial court construed the letter as a part of the contract and properly excluded it. We reverse and remand.

### Facts and Trial Court Actions

The pertinent part of the insurance policy states:

> We will pay damages which a **covered person** is *legally entitled to recover* from the owner or operator of an **uninsured motor vehicle** . . . .
>
> . . . .

---

1. Azima also contends on appeal that it was error not to award the 40% attorney's fees she proved by undisputed evidence at trial. The jury found 20% of the damages was a reasonable and necessary attorney's fee, but the trial court did not award attorney's fees. Since liability under the contract is undetermined, we do not reach the issue of attorney's fees. *See, e.g., Accent Builders Co. v. Southwest Concrete Sys., Inc.,* 679 S.W.2d 106, 110 (Tex.App.—Dallas 1984, writ ref'd, n.r.e.) (not reaching attorney's fees); *Gayne v. Dual–Air, Inc.,* 600 S.W.2d 373, 376 (Tex.Civ. App.—Houston [14th Dist] 1980, no writ).

*Any judgment for damages arising out of a suit brought without our written consent is not binding on us.*

(bold in original, italics added). The requirement of the policy, then, is clear enough. The insurance company must give written consent to sue the uninsured owner or operator before the results of that suit will bind the insurance company.

The trial court not only excluded the letter from State Farm that Azima contends constituted written consent; it also excluded her testimony about her discussion with a State Farm agent relevant to the context and meaning of the letter. In her bill of exceptions, Azima testified that State Farm had paid for some of her property damages. However, she testified, before she received the letter, an agent from State Farm told her that State Farm had covered the limit they could pay under the policy, and she had to pursue the rest of her damages with the other party. Azima's Exhibit No. 1 in her bill of exceptions is the letter State Farm sent her, which stated in part:

> The above captioned file has been referred to the Subrogation Department to pursue collection of your deductible plus the monies State Farm paid for repairs, rental and/or uninsured motorist claims. *Please understand, if you have any out of pocket expenses, that are not covered by your policy, you will have to contact the other party or their insurance carrier and make a claim for reimbursment* [sic]. Any releases that you sign should state that they are for your interest only, so as not to affect our recovery attempts.

(emphasis added). Azima made her claim against the "other party," Sturdivant, by filing a lawsuit against him.

Instead of admitting the letter and related testimony, the trial court presented the case to the jury as a negligence action against Sturdivant. The jury found Sturdivant's negligence had caused $7,000 in damages.

### The Issue

To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *Bridges v. City of Richardson,* 163 Tex. 292, 354 S.W.2d 366, 368 (1962).

■ Whether the insurance company gave written consent to sue was a critical fact issue in the case. Without written consent by the insurer, the default judgment against the negligent tortfeasor is not binding in the current lawsuit, and the jury can find the amount Azima is "legally entitled to recover" from Sturdivant. However, if State Farm gave written consent, then the judgment binds the insurance company up to the policy limits of $100,000. Azima says she got written consent to sue. State Farm says she did not. A jury can believe or disbelieve either side's evidence, but first they must see and hear it.

The letter and the related oral statements by the insurance agent were some evidence, if believed, that the insurance company had given written consent to sue. The letter furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact of whether State Farm gave Azima written consent to sue. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) (Pope, J.). The letter also tends to make the existence of written consent more probable than it would be without the letter. The insurance company clearly gave written consent for the policyholder to do something.

■ To the degree this written language is uncertain of meaning, the plaintiff's testimony in her bill of exceptions is relevant to help prove the meaning of the letter. TEX. R.CIV.EVID. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Parol evidence can be used to explain what a written document means when the meaning is not clear by looking at the written language itself. *E.g.*

*Jauregui v. Jones,* 695 S.W.2d 258, 262 (Tex. App.—San Antonio 1985, writ ref'd, n.r.e.).

The trial court erred if it construed the letter as part of the insurance contract, as State Farm contends. The letter was evidence of whether State Farm had acted in a manner that satisfied the "written consent" provision of the contract. Under these circumstances, the trial court should have admitted parol evidence from both parties to explain the letter and allowed the jury to determine its meaning. In *Cavalcade Oil Corp. v. Samuel,* 746 S.W.2d 842, 844 (Tex. App.—El Paso 1988, writ dism'd), the lessee contended that a forfeiture letter sent pursuant to a lease operated as a forfeiture of the lease as a matter of law. The letter was ambiguous, however, as to how long the lessee could delay payment and avoid a forfeiture. The lessee's secretary had telephoned the lessor's attorney about the letter, offering payment by check. Among other things, the attorney stated he would declare a forfeiture if the lessee did not pay within three days. The El Paso Court of Appeals held that since the forfeiture letter was ambiguous, it was proper to admit testimony about the phone conversation and submit it to the jury because the conversation was probative as to whether the lease was forfeited. In the present case, Azima's telephone conversation with the State Farm agent is some evidence about whether State Farm gave written consent to sue.

Whether the insurance company did or did not give consent to sue by this letter was an issue for the jury to determine. A jury could reasonably conclude that "making a claim" encompassed the power to enforce the claim. *See Kindred,* 650 S.W.2d at 63 (reasonable minds could differ). State Farm, on the other hand, may introduce evidence that shows the language in the letter was not meant as consent. It may also deny the conversation or offer its own version of what was said. Since the court excluded all evidence regarding consent to sue, there is no finding of whether or not the policy holder had gotten written consent to bring the suit. The jury must decide whom to believe.

### Re-trial

In re-trying this case, the jury must first determine whether State Farm gave written consent for Azima to sue Sturdivant, the uninsured motorist. If the new jury finds State Farm consented, State Farm owes Azima its policy limit of $100,000 under the clear terms of the policy. If the jury finds State Farm did not give Azima written consent to sue Sturdivant, then the judgment against Sturdivant is not binding on State Farm, and State Farm is only liable for such traditional actual damages as the jury determines. Reversed and remanded.

PEEPLES, Justice, dissenting.

I respectfully dissent from the majority opinion, which substantially changes the law of uninsured motorist litigation. The majority holds that one sentence in a subrogation letter raised a fact issue that the insurer consented in advance to be bound by a default judgment. I disagree.

Azima was injured by an uninsured motorist. Her own carrier, State Farm, paid her certain monies and then notified her in writing that it would be seeking a subrogation recovery. State Farm's letter to Azima then said that if she wanted compensation for damages not covered by her policy with State Farm she would have to seek payment from the tortfeasor or his insurance company.

Azima sued the tortfeasor and took a $1,000,000 default judgment against him. She then sued State Farm and contended that it had consented to her suit against the tortfeasor; it therefore was bound by the default judgment and owed its $100,000 uninsured motorist policy limits. The trial court disagreed and tried the case as an ordinary uninsured motorist case: It submitted the tortfeasor's negligence and proximate cause in one question, and Azima's damages in a second question. The jury found negligence and proximate cause, and damages of $7000. The court rendered judgment for Azima against State Farm for that amount.[1]

I disagree with the majority's holding that the sentence in the subrogation letter—which

1. The court also rendered judgment on the verdict for attorney's fees.

said only that Azima could seek payment for uninsured damages from the tortfeasor—raises a fact issue of written consent. The "no evidence" and "more than a scintilla" cases do not mean that written language may be taken out of context to raise a fact issue. On the contrary, we must read the policy language to determine what kind of evidence will prove consent. My disagreement with the majority is not over the no-evidence standard. We disagree about a question of substantive law: what must Azima show in order to raise an issue of State Farm's consent. As I read the insurance policy, it requires evidence that State Farm consented to let Azima sue the tortfeasor and bind it with the judgment. The record shows only that State Farm advised Azima that if she wanted to recover any damages that her State Farm policy did not insure, she would have to seek recovery from the tortfeasor.

Thus, under the insurance policy, it is not enough to show that State Farm consented for Azima to seek additional damages from the tortfeasor. The policy requires proof that State Farm consented to be bound by Azima's judgment against the tortfeasor.

The written-consent provision in the policy shows that the insurer was *not to be bound by a judgment* unless it had consented to the suit: "Any judgment for damages arising out of a suit brought without our written consent *is not binding on us.*" (emphasis added). The subrogation letter from State Farm to Azima says:

> The above captioned file has been referred to the Subrogation Department to pursue collection of your deductible plus the monies State Farm paid for repairs, rental and/or uninsured motorist claims. Please understand, *if you have any out of pocket expenses, that are not covered by your policy, you will have to contact the other party or their insurance carrier and make a claim for reimbursement.* (emphasis added)

In this letter, the insurer is saying: Your policy did not cover all types of damages; if you want compensation for such uninsured items of damages, you will have to seek recovery from the tortfeasor or his insurer.

The emphasized sentence makes clear that State Farm was not consenting to a suit against an uninsured motorist *in the sense that it was agreeing to be bound by the judgment up to its policy limits.* The sentence in the subrogation letter is not evidence of consent to let the policyholder sue the uninsured motorist, take a judgment, and then bind the insurer with that judgment.

The record shows a fair trial of an ordinary uninsured motorist case in which the jury simply awarded the plaintiff less than she desired. I would affirm the judgment awarding Azima $7000 from State Farm.

