Cathy J. Sheehan, Nancy L. Farrer, San Antonio, for petitioner.

Charles A. Nicholson, Roger G. Bresnahan, San Antonio, for respondent.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**Jasmine AZIMA, Respondent.**

**No. 94–1324.**

Supreme Court of Texas.

March 30, 1995.

PER CURIAM.

In this case we determine whether an insurance carrier gave a policyholder its written consent to sue an uninsured motorist in a subrogation letter it sent to the policyholder. Because we hold that the subrogation letter is no evidence that the carrier consented to the policyholder's suit, a majority of the Court reverses the judgment of the court of appeals and affirms the judgment of the trial court.

The policyholder, Jasmine Azima, alleged that she suffered injuries as a result of an automobile accident caused by the negligence of Frederick Sturdivant, an uninsured motorist. Azima's automobile insurance policy with State Farm Mutual Automobile Insurance Company provides uninsured motorists coverage for any damages the insured is

legally entitled to recover from an uninsured motorist. The uninsured motorists provision of Azima's policy also states that a "judgment for damages arising out of a suit brought without our [State Farm's] written consent is not binding on us."

After the accident, Azima submitted claims for damages under various provisions of her policy. She did not submit a claim under the uninsured motorists provision because neither she nor State Farm was aware that Sturdivant was an uninsured motorist. State Farm reimbursed Azima for some of her claims and sent her a subrogation letter which stated in pertinent part:

> The above captioned file has been referred to the Subrogation Department to pursue collection of your deductible plus the monies State Farm paid for repairs, rental and/or uninsured motorist claims. Please understand, if you have any out of pocket expenses, that are not covered by your policy, you will have to contact the other party or their insurance carrier and make a claim for reimbursment [sic]. Any releases that you sign, should state that they are for your interest only, so as not to affect our recovery attempts.

Azima claims that before she received the subrogation letter, she had a conversation with a State Farm agent who told her that State Farm had reimbursed her for everything to which she was entitled under her policy, and that she would have to pursue an action against Sturdivant to recover any remaining damages.

Azima filed suit against Sturdivant and subsequently learned that he was uninsured. After obtaining a $1 million default judgment against Sturdivant, Azima made a demand on State Farm for $100,000, the policy limit under the uninsured motorists provision of her policy. State Farm refused to pay, claiming Azima never obtained its written consent to sue Sturdivant.

Azima then sued State Farm for breach of contract. At trial, she sought to introduce the subrogation letter, which she maintains constitutes State Farm's written consent for her to sue Sturdivant. She also wanted to testify about her conversation with the State Farm agent as additional evidence that State Farm gave its written consent for her to sue Sturdivant. The trial court excluded the letter and Azima's testimony and presented the case to the jury as a negligence action against Sturdivant. The jury found that Sturdivant's negligence caused Azima $7,000 in damages, and the trial court rendered judgment in accordance with the verdict. The court of appeals, with one justice dissenting, reversed and remanded, holding that the letter and Azima's testimony were admissible to determine whether State Farm gave Azima its consent to sue Sturdivant. 884 S.W.2d 900.

█ There is no evidence raising the issue of whether State Farm consented to Azima's suit against Sturdivant. The subrogation letter clearly states that Azima will have to make a *claim* with the other party for any expenses *not covered by her policy;* it does not authorize Azima to file a *lawsuit* for damages which are *covered by her policy,* obtain a judgment, and then bind State Farm by that judgment. This construction is strengthened by State Farm's statement in the subrogation letter that any releases Azima signed should expressly state that they were in her interest only, so as not to interfere with State Farm's recovery attempts.

Moreover, Azima's policy provides that in order for a judgment to be binding on State Farm, the insured must obtain the carrier's written consent to file suit. The purpose of requiring the carrier's written consent to sue is to protect the carrier from liability arising from default judgments against an uninsured motorist or from insubstantial defense of the uninsured motorist. *Allstate Ins. Co. v. Hunt,* 469 S.W.2d 151, 153 (Tex.1971). To allow Azima to bind State Farm with a judgment in this case would go against this purpose.

█ Azima's testimony regarding her conversation with a State Farm agent likewise is not admissible to create an issue concerning consent. Parol evidence is admissible to determine the meaning of a writing *if* the writing is reasonably susceptible to more than one interpretation. *R & P Enters. v. La-Guarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). Because the subrogation let-

ter is unambiguous, the trial court properly excluded Azima's testimony.

We hold that there is no evidence that State Farm consented to Azima's suit against Sturdivant, and therefore the trial court did not err by excluding either the subrogation letter or Azima's testimony. Accordingly, a majority of this Court grants State Farm's application for writ of error, and pursuant to Rule 170 of the Texas Rules of Appellate Procedure, without hearing oral argument, reverses the judgment of the court of appeals and affirms the judgment of the trial court.