**In re James Michael REYNOLDS and Pelhams Industrial Warehouse, Inc.**

**No. 12–10–00176–CV.**

Court of Appeals of Texas, Tyler.

May 16, 2012.

---

**10.** Because this issue is dispositive, we do not address Raytheon's remaining three issues.

*See* Tex.R.App. P. 47.1.

642

Rebecca E. Bell, Thomas W. Fee, for Relator.

Don Wheeler, Darrin Walker, for Real Party in Interest Richard Sharp.

Dick Davis, Real Party in Interest Southern Farm Bureau Casualty.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

James Michael Reynolds, Pelhams Industrial Warehouse, Inc., and Texas Farm Bureau Casualty Insurance Company (Farm Bureau) are defendants in a personal injury action filed by the real party in interest, Richard Sharp. Reynolds and Pelhams, Relators, request a writ of mandamus directing the trial court to (1) sever Sharp's claim against Texas Farm Bureau Casualty Insurance Company (Farm Bureau) and, following severance, to (2) grant Relators' motion to transfer venue, and (3) transfer Sharp's claims against Relators to Tarrant County. The respondent is the Honorable Charles R. Mitchell, Judge of the 273rd Judicial District Court, Shelby County, Texas. We conditionally grant the petition.

### PROCEDURAL BACKGROUND

Richard Sharp filed a personal injury action in Shelby County to recover damages he sustained in an accident involving his vehicle and an eighteen wheeler driven by James Michael Reynolds. Sharp alleges that Reynolds caused the accident.

Pelhams Industrial Warehouse, Inc. is Reynolds's employer. Sharp seeks damages from both Reynolds and Pelhams, and alleges they were underinsured motorists at the time of the accident.

Sharp also alleges that, at the time of the accident, he had an insurance policy issued by Farm Bureau's predecessor that provided for underinsured motorist (UIM) benefits. He asserts that all conditions precedent to recovery under the policy have been satisfied and seeks the policy limits for UIM benefits.

Relators each filed a general denial subject to a motion to transfer venue in which each asserted that Sharp had not pleaded any facts showing that venue is proper in Shelby County. To the contrary, they urged, Sharp alleged that Reynolds is a resident of Tarrant County, Pelhams is a company doing business and having its principal office in Tarrant County, and the accident occurred in Johnson County. They asserted that these allegations showed venue was not proper in Shelby County, but was proper in Tarrant County. Accordingly, Relators requested that the case be transferred to Tarrant County pursuant to the general venue statute.[1] Sharp filed a response opposing the motions, and Relators filed a reply to his response. After a hearing, the trial court denied the motions to transfer venue without specifying a reason.[2]

Relators then filed a joint motion to sever, subject to their motions to transfer venue, alleging that Farm Bureau had been improperly joined in the suit and that Sharp's claim against Farm Bureau

was "neither ripe nor a part of the underlying liability matter." They alleged further that Sharp had not pleaded the "inextricably intertwined" elements or factual support necessary to support Farm Bureau's joinder. Accordingly, they asserted that "it is difficult to understand why same is included in this lawsuit at all other than for impermissible purposes such as shadow parties to establish venue or to otherwise attempt to place the issue of insurance coverage (and the amount of such coverage) before the fact finder." Relators also filed a joint motion for reconsideration of their motions to transfer venue. The motion for reconsideration included a supplemental motion to sever. It also incorporated by reference Relators' original motions to transfer venue, all supporting briefing, and their motion to sever, "as it relates to [Sharp's] potential claim that may not exist as to [Farm Bureau]."

Sharp responded that venue is proper in Shelby County, citing the mandatory venue statute for suits pertaining to uninsured/underinsured motorist coverage.[3] He also reurged his previous arguments in opposition to the venue motions and disputed Relators' ripeness and severance arguments.

In a telephonic hearing, the trial court denied Relators' motion for severance, but did not sign a written order. Thereafter, Sharp filed a motion requesting the trial court to (1) vacate its prior order denying Relators' motions to transfer venue; (2) grant Sharp leave to file supplemental evidence; (3) reconsider Relators' motions to

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a)(2), (3) (West 2002) (general venue statute, when applicable, prescribes four possible venue choices, including county of defendant's residence when cause of action accrued if defendant is natural person, and county of defendant's principal office in this state if defendant is not natural person).

2. The record includes an order setting a hearing on Relators' motions to transfer venue. We assume that this hearing was held.

3. *See* Tex. Ins.Code Ann. § 1952.110 (West 2009).

transfer venue and motion to sever; and (4) deny the motions. In a second telephonic hearing, the trial court granted Sharp's motion in its entirety without specifying a reason. Relators then filed this original proceeding challenging the trial court's order denying reconsideration of their motions for severance and transfer of venue. They also filed a motion for emergency relief. We granted the motion, and stayed the proceedings in the trial court until further order of this court.

*AVAILABILITY OF MANDAMUS*

■ Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.,* 235 S.W.3d 619, 623 (Tex.2007) (orig. proceeding). To obtain mandamus relief, the relator must show that (1) the trial court clearly abused its discretion, and (2) the benefits of mandamus outweigh the detriments to the extent that an appellate remedy is inadequate. *In re Poly–America,* 262 S.W.3d 337, 347 (Tex.2008) (orig. proceeding).

■ A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 839–40. We cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable, even if we would have decided the issue differently. *Id.* at 840. However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in

appellate reversal by extraordinary writ. *Id.*

■ In providing guidance for determining whether an appellate remedy is adequate, the Texas Supreme Court has noted that the operative word, "adequate," has no comprehensive definition. *In re Prudential Ins. of Am.,* 148 S.W.3d 124, 136 (Tex.2004) (orig. proceeding). Instead, it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. *Id.* These considerations include both public and private interests, and the determination is practical and prudential rather than abstract or formulaic. *Id.* Thus, the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 262 (Tex.2008) (orig. proceeding).

■ When the benefits of mandamus review outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate. *Id.* "Mandamus will not issue when the law provides another, plain, adequate, and complete remedy." *In re Tex. Dep't of Family and Protective Servs.,* 210 S.W.3d 609, 613 (Tex.2006).

### Severance and Venue

■ An order denying severance is not a final judgment and therefore is not appealable. *See Beckham Group, P.C. v. Snyder,* 315 S.W.3d 244, 245 (Tex.App.-Dallas 2010, no pet.). Consequently, mandamus is the appropriate avenue by which a party may seek review of a trial court's order denying severance. *In re Liu,* 290 S.W.3d 515, 518 (Tex.App.-Texarkana 2009, orig. proceeding).

■ A party may appeal a venue ruling following the trial on the merits.

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 2002). If venue was improper, "it shall in no event be harmless error and shall be reversible error." *Id.* Consequently, venue determinations generally are not reviewable by mandamus. *In re Masonite Corp.,* 997 S.W.2d 194, 197 (Tex.1999) (orig. proceeding). Where, as here, the relator does not seek enforcement of a mandatory venue statute, mandamus generally is not available absent an abuse of discretion by the trial court and an inadequate appellate remedy. *See id.* But mandamus review of permissive venue determinations is appropriate in "extraordinary circumstances." *Team Rocket, L.P.,* 256 S.W.3d at 262.

### AUTHORITY TO RECONSIDER VENUE RULING

Sharp and Relators disagree on whether the trial court correctly denied reconsideration of Relators' motions to transfer venue. But neither Sharp nor Relators question the trial court's authority to reconsider its venue ruling. Nevertheless, there are cases holding that a trial court has no such authority. And if the trial court has no authority to reconsider its venue ruling, mandamus is not available to compel it to do so. *See, e.g., Van Es v. Frazier,* 230 S.W.3d 770, 775 (Tex.App.-Waco 2007, pet. denied) (denying mandamus directing reconsideration of prior venue ruling where reconsideration would have been improper).

In this case, Relators requested a severance in connection with their motion for reconsideration of the trial court's venue ruling. In other words, they requested severance and transfer of venue; they did not request a separate trial on Sharp's claim against Farm Bureau if the trial court declined to reconsider its venue ruling. Therefore, if the trial court had no authority to reconsider its venue ruling, we need not address severance. Accordingly, we first consider whether the trial court had the authority to reconsider its venue ruling.

Except under circumstances not present in this case, "[i]f venue has been sustained as against a motion to transfer ..., then no further motions to transfer shall be considered...." *See* TEX.R. CIV. P. 87(5). In reliance on this rule, some courts have held that a trial court cannot reconsider the denial of a motion to transfer venue, even if, as here, only one such motion has been filed. *See, e.g., In re Med. Carbon Res. Inst., L.L.C.,* No. 14–07–00935–CV, 2008 WL 220366, at *1–2 (Tex.App.-Houston [14th Dist.] Jan. 29, 2008, orig. proceeding) (mem. op.); *Van Es,* 230 S.W.3d at 775; *Dorchester Master Ltd. P'ship v. Anthony,* 734 S.W.2d 151, 152 (Tex.App.-Houston [1st Dist.] 1987, orig. proceeding). Some courts have also held that an order reconsidering the prior denial of a motion to transfer venue is void. *See, e.g., Med. Carbon Res. Inst.,* 2008 WL 220366, at *1–2; *Dorchester,* 734 S.W.2d at 152.

■ The San Antonio court of appeals has held, however, that Rule 87(5) does not preclude reconsideration of the "first and only motion to transfer scheduled for hearing...." *Orion Enters., Inc. v. Pope,* 927 S.W.2d 654, 659 (Tex.App.-San Antonio 1996, orig. proceeding [motion to file mandamus overruled]) (citing *HCA Health Servs. of Tex., Inc. v. Salinas,* 838 S.W.2d 246, 248 (Tex.1992)). The court reasoned that an order denying a motion to transfer venue is interlocutory, both as to the trial court and the parties. *Id.* Therefore, like any other interlocutory order, an order denying a motion to transfer venue may be reconsidered at any time within the period of the trial court's plenary power. *Id.* We agree with the reasoning in *Orion* and conclude that the trial court in this case had authority to reconsider its prior denial of Relators' motions to transfer venue.

*See id.* We now proceed to the merits of Relators' petition.

### RIPENESS

Relators first argue that the trial court abused its discretion when it concluded that Texas Insurance Code Section 1952.110, a mandatory venue statute, fixes venue in Shelby County. Section 1952.110 provides that, in an action against an insurer "in relation to [uninsured/underinsured motorist] coverage . . ., including an action to enforce that coverage," venue is mandatory in (1) the county in which the policyholder or beneficiary instituting the action resided at the time of the accident, or (2) the county in which the accident occurred. TEX. INS.CODE ANN. § 1952.110 (West 2009).

Sharp contends that Section 1952.110 applies here. Therefore, his argument continues, venue is mandatory in Shelby County because he resided there at the time of the accident. Relators disagree, asserting that Sharp's claim against Farm Bureau is not ripe for adjudication and therefore cannot fix venue.

### Venue Challenges

■ The rules of procedure prescribe the scope of the trial court's consideration in venue challenges. *See* TEX.R. CIV. P. 87. One significant limitation is that the trial court may not inquire into the merits of a cause of action. *See* TEX.R. CIV. P. 87(2)(b) (providing that "[i]t shall not be necessary for a claimant to prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings"); *see generally* William Underwood, *Reconsidering Derivative–Venue in Cases Involving Multiple Parties and Claims,"* 56 BAYLOR L.REV. 579 (Spring 2004). Moreover, "no party shall ever be required for venue purposes to support by prima facie proof the existence of a cause of action or part thereof, and at the hearing the pleadings of the parties shall be taken as conclusive on the issues of existence of a cause of action." TEX.R. CIV. P. 87(3)(a). Consequently, the existence of a cause of action is immune from challenge at a venue hearing. *Killeen v. Lighthouse Elec. Contractors, L.P.,* 248 S.W.3d 343, 349 (Tex.App.-San Antonio 2007, pet. denied); *see also* Underwood, *supra* at 606–07 ("[A] plaintiff who can adequately plead a claim against a resident defendant is not required to show that he has any evidence whatsoever to support the claim—at least not in connection with the venue determination at the trial court level."). But absent proper pleading, the Rule 87 presumption does not arise. *See* TEX.R. CIV. P. 87(2)(b).

### Proper Pleading Under Rule 87

■ Ripeness is a component of subject matter jurisdiction. *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000). Therefore, ripeness is a question of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). We have been unable to locate any Texas case addressing whether the proper pleading required by Rule 87 must include allegations establishing ripeness. One court has held that proper pleading must include facts that demonstrate standing.[4] *See In re Valetutto,* 976 S.W.2d 893, 895 (Tex. App.-Austin 1998, orig. proceeding). Another court, quoting Rule 87(2)(b), questioned whether its review of the trial court's venue determination should encompass a standing challenge. *See Sw. Bell*

---

4. Standing is also a component of subject matter jurisdiction. *Gibson,* 22 S.W.3d at 851. Standing focuses on who may bring the cause of action, and ripeness focuses on when the cause of action may be brought. *Id.*

*Tel. Co. v. Superior Payphones, Ltd.,* No. 13–05–00661–CV, 2006 WL 417423, at *5–6 (Tex.App.-Corpus Christi Feb. 23, 2006, pet. dism'd) (mem. op.). Ultimately, that court concluded that it need not define the extent of its review because the result was the same, regardless of whether its review included the standing challenge. *Id.,* at *6. Because the result here is also the same, regardless of the scope of our review, we take a similar approach. Therefore, we assume, without deciding, that proper pleading under Rule 87 requires allegations supporting ripeness.

 In the instant case, the trial court implicitly determined that Sharp properly pleaded a cause of action as required by Rule 87. Based upon our assumption that proper pleading under Rule 87 requires allegations supporting ripeness, we will consider whether the trial court correctly concluded that Sharp's petition included those allegations. Because ripeness is a component of subject matter jurisdiction, we review a ripeness determination under the same standard by which we review subject matter jurisdiction generally. *Alvarado v. Okla. Sur. Co.,* 281 S.W.3d 38, 42 (Tex.App.-El Paso 2005, no pet.). Under that standard, the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We then take those facts as true, and focus on whether the pleader has alleged that an injury has occurred or is about to occur. *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.,* 971 S.W.2d 439, 442 (Tex.1998); *Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

 Sharp alleges in his petition that at the time of the collision, he had UIM coverage under a policy of insurance issued to him by Farm Bureau's predecessor. He alleges further that the collision was caused by Reynolds's negligence while acting in the course and scope of his employment with Pelhams. Sharp also avers that Reynolds and Pelhams were UIMs at the time of the collision, and therefore Farm Bureau is liable to him for the policy limits under the UIM provision in the policy. Sharp pleads generally that all conditions precedent to recovery under the policy have been complied with, that demand has been made for payment, and Farm Bureau has refused to pay. These allegations, when taken as true, provide sufficient facts to establish the requisite injury for ripeness. *See Alvarado,* 281 S.W.3d at 42.[5] Accordingly, the trial court did not abuse its discretion in concluding that Sharp had properly pleaded a cause of action against Farm Bureau under Rule 87 and that this claim could fix venue.

### SEVERANCE—ABUSE OF DISCRETION

Relators next argue that the trial court abused its discretion in denying reconsideration of their motions for severance of Sharp's claim against Farm Bureau and for transfer of venue. They argue that joinder of Sharp's claims against them with his claim against Farm Bureau is

5. In *Alvarado,* the plaintiff sued his employer's UIM insurer and a UIM who ran a red light and hit his vehicle. *Alvarado,* 281 S.W.3d at 39. He alleged that his employer carried an insurance policy with the named UIM insurer and that the policy included coverage for damages caused by a UIM. *Id.* at 40. He alleged further that the other driver involved in the collision was a UIM, and that "[d]espite Plaintiff's compliance with the terms and provisions of the policy, [the UIM insurer] has failed and refused to pay benefits due under the policy provisions in question." *Id.* The UIM insurer filed a motion to dismiss arguing that the plaintiff's suit was premature and no cause of action had accrued against the insurer. *Id.* In its analysis, the El Paso court observed that the plaintiff (Alvarado) might not ultimately prevail on the merits, but held that he had pleaded sufficient facts to confer subject matter jurisdiction on the trial court. *Id.* at 42.

improper and therefore severance is required. Sharp disagrees.

## The Trial Court's Discretion

Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court. *Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996) (orig. proceeding); *see* Tex.R. Civ. P. 41. Although the trial court has broad discretion in determining whether to grant severance, that discretion is not unlimited. *In re Gen. Agents Ins. Co. of Am.,* 254 S.W.3d 670, 673 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding [mand. denied]). Instead, the trial court is required to exercise "a sound and legal discretion within limits created by the circumstances of the particular case." *See Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956) (orig. proceeding) (addressing denial of separate trials under Texas Rule of Civil Procedure 174). "That a claim *may* be severed does not always mean that it *must.*" *In re Wilkerson,* No. 14–08–00376–CV, 2008 WL 2777418, at *1 (Tex. App.-Houston [14th Dist.] June 6, 2008, orig. proceeding [mand. denied]) (mem. op.).

But there is no room for the exercise of discretion "[w]hen all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby...." *See Womack,* 291 S.W.2d at 683; *see also, e.g., In re Hochheim Prairie Farm Mut. Ins. Ass'n,* 296 S.W.3d 907, 912 (Tex.App.-Corpus Christi 2009, orig. proceeding) (applying *Womack* standard to severance under Texas Rule of Civil Procedure 41); *Gen. Agents Ins.,* 254 S.W.3d at 674 (same). Under these circumstances, the refusal to order a severance constitutes a violation of a plain legal duty, even though it is often termed a clear abuse of discretion. *Gen. Agents Ins.,* 254 S.W.3d at 674. In applying this standard, the desire to avoid some identified prejudice to the relator by denying severance must be weighed against the prejudice that could result from ordering severance. *See Womack,* 291 S.W.2d at 683.

## Requirements for Severance

A severance divides a lawsuit into two or more separate and independent causes. *Hall v. City of Austin,* 450 S.W.2d 836, 837–38 (Tex.1970). When a trial court grants a severance, the separated causes of action typically proceed to individual judgments that are themselves separately final and appealable. *Id.* at 838. Although severance runs counter to the general policy condemning a multiplicity of suits, it is indicated in some situations. 3 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 17.26 (2d ed. 2000).

A claim is properly severable only if (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990) (op. on reh'g). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

Whether a trial court should grant a motion to sever is ultimately a question of law. *In re Liu,* 290 S.W.3d at 520 (citing *Guar. Fed. Sav. Bank,* 793 S.W.2d at 658–59). When considering whether to grant the motion, the trial court must generally accept the plaintiff's

pleadings as true and then determine whether severance is appropriate. *Id.* Consequently, the only remaining dispute concerns the legal consequences stemming from "accepted-as-pleaded facts." *Id.*

### This Court's Prior Opinion

The disagreement in this case concerns the third requirement for severance: whether the severed actions are "so interwoven ... that they involve the same facts and issues." Sharp contends the trial court correctly concluded that the claims are sufficiently interwoven to preclude severance. As authority, he cites *State Farm Mutual Automobile Insurance Co. v. White*, 461 S.W.2d 476, 479 (Tex.Civ.App.-Tyler 1970, no writ).

In *White*, an injured driver sued to recover damages he and his minor daughter sustained as a result of the alleged negligence of an uninsured motorist. *Id.* at 478. He also sued his insurer in the same action, requesting payment of uninsured motorist benefits. *Id.* The suit was filed in the county where the accident occurred, and the insurer filed a plea of privilege alleging it was entitled to be sued in the county of its residence. *Id.* As pertinent here, this court held that venue was proper against the insurer because (1) the liability of the tortfeasor and the uninsured motorist arose out of the same transaction and (2) the two causes of action were "so intimately connected that [they] should be joined to avoid a multiplicity of suits." *Id.* at 479 (applying former Article 1995, subdivision 4, predecessor to Tex. Civ. Prac. & Rem.Code Ann. § 15.005 (West 2002)). Sharp claims this holding mandates a conclusion that the claims in the instant case are sufficiently interwoven to preclude severance. We disagree.

Under former Article 1995, subsection 4, all defendants could be sued together in any county in which at least one of them resided. *See id.* at 479. However, the claims against the resident defendant and the nonresident defendant were required to be "properly joinable." *See, e.g., Glens Falls Indem. Co. v. Sterling*, 213 S.W.2d 858, 861 (Tex.Civ.App.-Dallas 1948, no writ [mand. overruled] ). One means of satisfying this requirement was to allege a cause of action against the resident defendant and a cause of action against the nonresident defendant that were so "intimately connected" that they could be joined under the rule intended to avoid a multiplicity of suits. *See Stockyards Nat'l Bank v. Maples*, 127 Tex. 633, 95 S.W.2d 1300, 1302 (1936). However, the "intimately connected" test is not applicable when severance is the issue. *See, e.g., Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. Instead, we must determine whether the claims are "interwoven," meaning that they "involve the same facts and issues." *See id.* Severance was not the issue in *White*, and therefore this court did not examine whether the claims in that case involved the same facts and issues. *See White*, 461 S.W.2d at 479. Consequently, our holding in *White* is not dispositive here.

### Sharp's Pleadings

According to the allegations in Sharp's third amended petition, which we take as true, Reynolds ran a red light and turned in front of Sharp's vehicle. Sharp's vehicle struck Reynolds's vehicle, an eighteen wheeler, and Sharp suffered personal injuries as a result. Reynolds was acting in the course and scope of his employment at the time of the accident. Sharp sued Reynolds for damages asserting the theories of negligence and negligence per se. Sharp also sued Pelhams, Reynolds's employer, under the doctrine of respondeat superior. Sharp alleges that Reynolds and Pelhams were underinsured at the time of

the accident and seeks UIM benefits from Farm Bureau.

 To prevail on his negligence claim against Reynolds, Sharp must establish that Reynolds had a legal duty, he breached that duty, and Sharp suffered damages that were proximately caused by the breach. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001).[6] To prevail on his claim against Pelhams, Sharp must show that Pelhams was Reynolds's employer and also that Reynolds's act was committed within the scope of his general authority, in furtherance of Pelhams's business, and for the accomplishment of the object for which Reynolds was hired. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971).

 UIM coverage provides payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage. TEX. INS. CODE ANN. § 1952.106 (West 2009). This amount is reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle. *Id.* A UIM insurer has no contractual duty to pay benefits until the liability of the other motorist and the amount of damages suffered by the insured are determined. *Brainard,* 216 S.W.3d at 815. A motorist is underinsured if the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages. *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 380 (Tex. 1989). Therefore, to recover UIM benefits, Sharp must establish that he had UIM coverage, Reynolds's negligence proximately caused his damages and the

amount of his damages, and Reynolds and Pelhams were underinsured. *See Mid–Century Ins. Co. of Tex. v. McLain,* No. 11–08–00097–CV, 2010 WL 851407, at *11 (Tex.App.-Eastland Mar. 11, 2010, no pet.) (mem. op.); *State Farm Mut. Auto. Ins. Co. v. Grayson,* 983 S.W.2d 769, 770 (Tex. App.-San Antonio 1998, no pet.).

 Sharp's negligence and UIM claims have in common the facts and issues relating to whether Reynolds was negligent; if so, whether his negligence proximately caused Sharp's damages and the amount of his damages; and whether Pelhams is also liable. The remaining elements of Sharp's UIM claim—whether Sharp had UIM coverage and whether Reynolds and Pelhams had insurance coverage in at least the amount of the damages recovered—are unrelated to the facts and issues pertaining to his negligence claims. Thus, the two causes of action have some overlapping facts and issues, but do not involve "the same facts and issues." Therefore, they are not "interwoven." Accordingly, we conclude that the claims are properly severable. But as we acknowledged earlier, a claim need not be severed simply because it can be. *Wilkerson,* 2008 WL 2777418, at *1. To complete our analysis, we must consider whether severance is necessary to do justice, avoid prejudice, or further convenience. *See Guar. Fed. Sav. Bank,* 793 S.W.2d at 658.

### Injection of Insurance

 Relators argued in the trial court, and continue to assert here, that if Sharp's claim against Farm Bureau is not severed, they will be prejudiced because insurance will be injected into the case. Ordinarily, a party seeking severance has the burden to show how it will be prejudiced if sever-

---

6. Negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action. *Thomas v.*

*Uzoka,* 290 S.W.3d 437, 445 (Tex.App.-Houston [14th Dist.] 2009, pet. denied).

ance is not granted and to present evidence to the trial court, in camera if necessary, to support its position. *See In re Trinity Universal Ins. Co.*, No. 12–03–00314–CV, 2003 WL 22839280, at \*2 (Tex. App.-Tyler Nov. 26, 2003, orig. proceeding) (mem. op.); *Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 194 (Tex.App.-Corpus Christi 1993, no writ). Sharp points out that Relators presented only argument, and no evidence, to show prejudice.

▮▮▮ The injection of insurance into a trial does not necessarily create prejudice. *See, e.g., Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 708 (Tex.1989) (trial court abused discretion by refusing to allow proposed voir dire questions about "liability insurance crisis" and "lawsuit crisis"); *Lewis v. United Parcel Svc., Inc.*, 175 S.W.3d 811, 816 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (reference to insurance not automatically reversible error). But evidence that a defendant was or was not insured against liability is not admissible on the issue of negligence. TEX.R. EVID. 411. "[This] rule is founded on the belief that the probative value of such evidence is vastly outweighed by the danger of unfair prejudice." 1 Steven Goode, Olin Guy Wellborn III, and M. Michael Sharlot, *Texas Practice Series: Guide to the Texas Rules of Evidence* § 411.1 (3d ed.2002); *see also Thornhill v. Ronnie's I–45 Truck Stop, Inc.*, 944 S.W.2d 780, 794 (Tex.App.-Beaumont 1997, writ dism'd by agr.) (recognizing that one purpose of Rule 411 is to avoid informing jury that someone other than defendant may be liable to pay damages).

Additionally, Texas courts have recognized that in the simultaneous trial of two claims, when evidence of liability insurance will be admissible as to only one of the claims, detailed evidence of insurance is prejudicial. *See, e.g., In re Foremost Ins. Co.*, 966 S.W.2d 770, 772 (Tex.App.-Corpus

Christi 1998, orig. proceeding) (conditionally granting mandamus requiring severance of personal injury claim joined with bad faith claim against defendant's liability insurer); *Black v. Smith*, 956 S.W.2d 72, 75 (Tex.App.-Houston [14th Dist.] 1997, orig. proceeding) (conditionally granting mandamus requiring severance of personal injury claim joined with claim against defendant's insurer for wrongful disclosure of medical information); *F.A. Richard & Assocs. v. Millard*, 856 S.W.2d 765, 767 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding) (conditionally granting mandamus requiring severance of negligence claim against UIM from bad faith claim against insurance adjuster).

▮▮ Here, evidence of insurance is not admissible in the trial of Sharp's negligence claims against Relators. *See* TEX.R. EVID. 411. But evidence of Relators' insurance and Sharp's UIM coverage is required to establish Sharp's UIM claims. *See Mid–Century*, 2010 WL 851407, at \*11; *State Farm Mut.*, 983 S.W.2d at 770. To allow evidence of insurance would violate Relators' substantial right to have their liability decided without any mention of insurance, and to exclude evidence of insurance would prejudice Sharp's presentation of his UIM claim. *See Foremost*, 966 S.W.2d at 772; *Black*, 956 S.W.2d at 75; *Millard*, 856 S.W.2d at 767. This presents an irreconcilable conflict that is apparent without the introduction of evidence. *See In re Allstate Tex. Lloyd's*, No. 14–05–00762–CV, 2005 WL 2277134, at \*4 (Tex. App.-Houston [14th Dist.] Sept. 2, 2005, orig. proceeding) (mem. op.) (per curiam) (pointing out, in response to argument that relator had not shown it would be prejudiced by denial of severance, that irreconcilable conflict was apparent in cases involving contractual and extracontractual claims). Therefore, we conclude that, in this situation, Relators' argument pertain-

ing to injection of insurance was sufficient to inform the trial court that prejudice would result from the simultaneous trial of Sharp's claims. Thus, Relators were not required to present evidence of prejudice. Consequently, Relators' failure to present evidence of prejudice is not fatal to their severance motion.

### Avoidance of Prejudice

Sharp acknowledges, at least implicitly, that Relators will suffer prejudice if insurance is injected into the trial of this case. He argues, however, that the procedure the trial court will follow at trial precludes the possibility of prejudice.[7] He argues further that there are no issues requiring the injection of insurance into the case before the jury.

The rules authorize two distinct trial procedures-severance and bifurcation-for avoiding prejudice. *See* Tex.R. Civ. P. 41, 174(b). A severance divides the lawsuit into two or more separate and independent causes, resulting in a final, appealable judgment in each cause. *Hall,* 450 S.W.2d at 837–38. A bifurcated trial results in one trial with separate parts before one jury. *In re United Fire Lloyds,* 327 S.W.3d 250, 254 (Tex.App.-San Antonio 2010, orig. proceeding). An order for bifurcation, or separate trials, leaves the lawsuit intact but enables the court to hear and determine one or more issues without trying all issues at the same time. *Id.*

Here, the trial court denied Relators' motion for severance and also denied

their motion for reconsideration. Nothing in the record indicates that a bifurcation order has been requested or signed. *See In re Koehn,* 86 S.W.3d 363, 367 (Tex. App.-Texarkana 2002, orig. proceeding) (holding that granting of separate trial minimized danger of prejudice from evidence of liability insurance). Thus, it appears from the record that the claims will be tried simultaneously, and we decline to speculate about what issues will be contested at trial. Therefore, we cannot determine from the record before us that prejudice can be avoided at trial without severance.

### Prejudice to Sharp

Sharp next points out that Farm Bureau has not consented to be bound by the results of a separate trial of his claims against Relators. He urges that because of the consent provision of the policy, he will have to try his case twice if his claim against Farm Bureau is severed, and Farm Bureau will have "two bites at the apple" if Sharp's case results in the first judgment.[8] As a result, Sharp contends, he will be prejudiced by severance, and therefore the trial court correctly exercised its discretion by denying reconsideration of the motion to sever.

Unless the UIM insurer has consented in writing to the suit, the usual result of a consent provision is that the insurer is not bound by a judgment entered in an action prosecuted by its insured against a UIM. *See, e.g., State Farm*

---

7. Specifically, Sharp points to his counsel's argument in the trial court that

 [w]e have actually tried in this Court—in both this court and Judge Griffin's court, cases similar to this to a jury without injecting insurance. Without in any way prejudicing the third party with the fact that there was a third party with U–I–M in the case. So, we have done that successfully.

 Counsel did not elaborate further, and did not represent to the trial court that the issue of prejudice had been addressed on appeal.

8. The record does not include a copy of the insurance policy State Farm issued to Sharp. Therefore, we are unable to quote the provision.

*Mut. Auto. Ins. Co. v. Azima,* 896 S.W.2d 177, 178 (Tex.1995) (per curiam); *Koehn,* 86 S.W.3d at 368. To avoid this result, an insured seeking the benefits of his UIM coverage may sue his UIM insurer directly without suing the UIM; obtain written consent from his UIM insurer and then sue the UIM alone, making the judgment binding against the insurance company; or sue the UIM without the written consent of the UIM insurer and relitigate liability and damages. *See, e.g., Azima,* 896 S.W.2d at 178; *Koehn,* 86 S.W.3d at 368.

Sharp acknowledges that in *Koehn,* the court concluded that the same rules apply when the UIM and the UIM insurer are joined in the same suit. *See Koehn,* 86 S.W.3d at 368. He argues, however, that *Koehn* was wrongly decided. Specifically, he urges that "[t]here is no logical reason that a carrier that is sued directly, and therefore participates at trial, will not be bound by the judgment simply because the uninsured motorist is also a party at trial. Nor is there any authority (other than *Koehn* ) that suggests such a result." We are not persuaded.

The rule Sharp advocates would permit an insured in a UIM case to unilaterally negate the consent clause in his policy merely by joining the UIM insurer and the UIM in the same action. But the purpose of requiring the UIM insurer's consent to suit against the UIM is to protect the insurer from liability arising from a default judgment against the UIM or an insubstantial defense by the UIM. *Azima,* 896 S.W.2d at 178; *Koehn,* 86 S.W.3d at 368. Sharp does not address the purpose of the provision and therefore does not explain how the UIM's joinder will afford the same protection. Although Sharp does not suggest that the UIM insurer undertake the defense of the UIM, we note that a UIM insurer's defense of a UIM can create a conflict of interest under a variety of circumstances. *See Allstate Ins. Co. v. Hunt,* 450 S.W.2d 668, 671 (Tex.Civ.App.-Houston [14th Dist.] 1970), *aff'd,* 469 S.W.2d 151 (1971) (providing extensive discussion of the "[s]erious ethical problems that [can] arise when an insurance company seeks to participate in the defense of an uninsured motorist").

We cannot conclude that joinder of the UIM and the UIM insurer in the same action negates the consent clause. Therefore, even absent severance, Sharp will be required to relitigate his claim against Farm Bureau if he obtains a judgment against Relators and Farm Bureau does not consent to be bound by the judgment. *See Koehn,* 86 S.W.3d at 368. Accordingly, Sharp has not shown that he will be prejudiced by severance.

### Conclusion

Sharp's UIM claim against Farm Bureau is severable, and severance is necessary to avoid prejudice to Relators. Additionally, a simultaneous trial would violate Relators' substantial right to have their liability decided without mention of insurance. *See Foremost,* 966 S.W.2d at 772; *Black,* 956 S.W.2d at 75; *Millard,* 856 S.W.2d at 767. This would result in manifest injustice to Relators. *See Foremost,* 966 S.W.2d at 772; *Black,* 956 S.W.2d at 75; *Millard,* 856 S.W.2d at 767. And if Sharp obtains a judgment against Relators, he will have to relitigate his UIM claim, even if it is not severed, unless Farm Bureau consents to be bound by the judgment. Therefore, he will not be prejudiced by severance.

We also conclude that "all of the facts and circumstances of the case unquestionably require a [severance] to prevent manifest injustice, there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby...." *See Womack,* 291 S.W.2d at 683;

*Hochheim,* 296 S.W.3d at 912; *Gen. Agents Ins.,* 254 S.W.3d at 674. Accordingly, we hold that the trial court abused its discretion in denying reconsideration of Relators' motion for severance.

### VENUE–ABUSE OF DISCRETION

Relators further contend that if we conclude the trial court abused its discretion in denying their motion to reconsider severance, we must also conclude that the court abused its discretion in denying their motion to reconsider venue. They argue that if Sharp's claim against Farm Bureau is severed, there exists no basis for maintaining venue of the remaining claims in Shelby County.

### Venue After Severance

Sharp sued Farm Bureau in Shelby County, the county of his residence at the time of the accident. *See* TEX. INS.CODE ANN. § 1952.110(1). Relying on Texas Civil Practice and Remedies Code Section 15.005, he joined his negligence claims against Relators in the same action. Farm Bureau did not object to venue in Shelby County. Therefore, venue of Sharp's claim against Farm Bureau is fixed in Shelby County. *See* TEX.R. CIV. P. 86(1).

Section 15.005 provides that where there are multiple defendants, and the plaintiff first establishes proper venue against at least one defendant, venue is then proper as to all defendants in all claims arising out of the same transaction, occurrence, or series of transactions or occurrences. *See* TEX. CIV. PRAC. REM.CODE ANN. § 15.005. Thus, as to Relators, venue is derivative only. *See* Underwood, *supra* at 582 ("Derivative-venue simply means venue over a particular claim or party that is derived from venue over some other claim or party in the same lawsuit-venue that would not exist independent of the other claim or party.").

We have held that the trial court abused its discretion in denying reconsideration of Relators' motion for severance. Severance would have divided the underlying action into two separate lawsuits. *See Hall,* 450 S.W.2d at 837–38. Therefore, because Section 15.005 is a derivative venue statute, it would not determine venue of Sharp's claims against Relators after severance. *Cf. Oryx Energy Co. v. Union Nat'l Bank of Tex.,* 895 S.W.2d 409, 416 (Tex.App.-San Antonio 1995, writ denied) (in addressing claim that trial court erred in denying motions to sever and transfer venue, appellate court first reviewed denial of severance; after concluding denial was not abuse of discretion, then reviewed venue in light of ruling on severance).

Relators contend that because severance is required, the general venue statute applies and venue is proper in Tarrant County. In pertinent part, the general venue statute provides that, subject to certain exceptions, a lawsuit may be brought in the county of the defendant's residence at the time the cause of action accrued if the defendant is a natural person, and the county of the defendant's principal office in this state if the defendant is not a natural person. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(2), (3). Sharp has alleged, and Relators agree, that Reynolds is a resident of Tarrant County, Pelhams is a company doing business and having its principal office in Tarrant County, and the accident occurred in Johnson County. Thus, under either subsection, Tarrant County is the correct venue.

 Sharp has not alleged that any basis exists for maintaining venue in Shelby County after severance. Consequently, we agree with Relators that because the trial court should have granted their motion to reconsider its severance ruling, it also should have granted their motion to reconsider its venue ruling and transferred

Sharp's claims against them to Tarrant County. *See Jones v. Ray,* 886 S.W.2d 817, 823 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding) (where severance order was abuse of discretion, order transferring venue in reliance on severance order must also fail). Its failure to do so constituted an abuse of discretion. *See id.*

### ADEQUACY OF APPELLATE REMEDY

■ In evaluating benefits and detriments to determine the adequacy of an appellate remedy, we consider whether mandamus will (1) preserve important substantive and procedural rights from impairment or loss; (2) allow us to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments; and (3) spare litigants and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *Team Rocket,* 256 S.W.3d at 262; *Prudential,* 148 S.W.3d at 136.

### Preservation of Rights

■ Relators have a substantial right to have their liability decided without any mention of insurance. *See, e.g., Foremost,* 966 S.W.2d at 772. We have held that severance is necessary to preserve that right. If Relators obtain judgment on a favorable jury verdict, they cannot appeal. If Sharp obtains a judgment against Relators on an unfavorable jury verdict, Relators could not obtain reversal for the incorrect denial of severance unless the court of appeals concludes that the trial court's error "probably caused the rendition of an improper judgment...." TEX.R.APP. P. 44.1(a)(1). Relators contend that, in that instance, "there will be no way to untangle how or whether prejudice and confusion infected the jury's deliberations." *See Hochheim,* 296 S.W.3d at 911. Although we cannot say that "there will be no way"

for them to meet this burden on appeal, we recognize that Relators cannot be assured of doing so. But even if Relators were to obtain a reversal, their substantial right will have been lost, in part, because only by a second trial will the right be available to them.

■ Moreover, severance and venue are intertwined in this case. Therefore, if Relators are unable to obtain a reversal of the incorrect denial of severance, they will be unable to obtain reversal of the incorrect venue ruling as well. *See Oryx,* 895 S.W.2d at 416 (denial of severance was not abuse of discretion, and therefore denial of motion to transfer venue was not error). Our venue statutes create a balance. *See Team Rocket,* 256 S.W.3d at 262. Under the statutory venue scheme, a plaintiff has the first choice to fix venue in a proper county. *Masonite,* 997 S.W.2d at 197. But the trial court must transfer venue to the county specified in the defendant's motion to transfer if the plaintiff fails to establish proper venue and the defendant provides prima facie proof that its requested venue is proper. *Id.* That balance will be disrupted, and Relators' procedural right to a correct venue will be lost, if Relators are unable to obtain a reversal of the trial court's incorrect venue ruling. *See Team Rocket,* 256 S.W.3d at 262 (procedural rights impaired when plaintiff nonsuited and refiled elsewhere to circumvent ruling on defendant's motion to transfer venue because balance of venue statutes disrupted).

### Direction for the Trial Court

Severance is ultimately a question of law. *Liu,* 290 S.W.3d at 520. Sharp argues that this court's holding in *White* required the trial court to deny severance in this case. And his comments to the trial court suggest that the fact situation presented here—the denial of severance

when negligence and UIM claims are joined in the same action—is a recurring one. Therefore, our interpretation of *White* and the case law pertaining to severance can provide helpful guidance to the trial court and prevent the recurrence of the situation presented here.

### Waste of Resources

Finally, we note that if the trial court's order denying reconsideration of Relators' motion for severance were reversed on appeal, a second trial would be required. This second trial would be a waste of judicial and public resources in the instant case as well as any other cases in which this situation arises. We recognize that the resulting waste would be minimal in comparison to circumstances that have been addressed in other mandamus proceedings. *See, e.g., id.* (trial court's ruling permitted plaintiff "to abuse the legal system by refiling his case in county after county, which would inevitably result in considerable expense to taxpayers and defendants, requiring defendants to proceed to trial in the wrong county"); *Masonite,* 997 S.W.2d at 199 (order transferring venue "wrongfully burdened fourteen other courts in fourteen other counties, hundreds of potential jurors in those counties, and thousands of taxpayer dollars in those counties"). Thus, this factor, unlike the two we have previously considered, weighs against mandamus.

### Summary and Holding

We acknowledge that mandamus review of incidental, interlocutory rulings by the trial courts can unduly interfere with trial court proceedings, distract appellate courts' attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform devel-opment of the law, and add unproductively to the expense and delay of civil litigation. *Prudential,* 148 S.W.3d at 136. But in this case, the trial court's denial of Relators' motions for reconsideration has failed to preserve two important rights—the right of Relators to have their liability determined without mention of insurance and their right to defend against Sharp's claims in a proper venue.

If mandamus is unavailable, Relators cannot exercise those rights except by a successful appeal and retrial. But they have no assurance that they can prevail if an appeal is necessary. And even if they were to successfully appeal, Relators' rights will have been impaired because two trials will have been necessary to preserve them. Moreover, mandamus will allow us to provide direction to the trial court in this case, and prevent the recurrence of this procedural conundrum in the future. And despite the relatively small waste of resources in comparison to those addressed in other cases, the denial of Relators' rights is significant and, in our view, likely cannot be remedied satisfactorily except by mandamus.

Based upon these considerations, we conclude that the benefits of mandamus outweigh the detriments. Accordingly, we hold that Relators have no adequate remedy by appeal.[9]

### DISPOSITION

For the reasons set forth above, we have concluded that Relators have satisfied both prerequisites to mandamus. Accordingly, we ***conditionally grant*** Relators' petition for writ of mandamus and direct the trial court to (1) vacate its order denying Rela-

---

**9.** Relators also assert that Section 15.005 is not applicable in this case because Sharp's claims against them and against Farm Bureau did not arise out of the same transaction, occurrence, or series of transactions and occurrences. That issue is not dispositive, however, and therefore we do not address it. *See* TEX.R.APP. P. 47.1.

tors' motion for reconsideration of their motions for severance and transfer of venue and (2) issue an order granting the motion for reconsideration, severing Sharp's claim against Farm Bureau, and transferring his claims against Relators to Tarrant County. We trust that the trial court will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so *within ten days of the date of the opinion and order.* The trial court shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing compliance. This court's stay is *lifted.*