# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 11, 2010

No. 09-20403

Lyle W. Cayce
Clerk

AMERICAN GENERAL LIFE INSURANCE CO,

Plaintiff–Appellee

v.

MICHAEL A. KIRSH,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-cv-03696

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:[*]

Michael A. Kirsh, a former agent of American General Life Insurance Co. ("American General"), appeals the district court's grant of summary judgment in favor of American General. Kirsh argues that the district court erred when it held that his operative contracts with American General obligated him to repay over $500,000 in commissions from the sale of two life insurance policies. Alternatively, Kirsh argues that the district court erred when it found him liable for 100% of the commissions, rather than 50% or 75%.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20403

The district court did not err when it granted summary judgment in favor of American General.  Kirsh's contracts obligated him to repay 100% of the commissions on the two relevant whole life insurance policies if the policy owners exchanged them for term life insurance within three years of the policies' effective dates.  Because the policy owners did so, we affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Kirsh began work as a life insurance agent for American General. Kirsh entered into an Agent Contract and a Master General Agent Contract (collectively, the "Agent Contracts") which governed American General's obligations to pay commissions to Kirsh for the policies Kirsh sold.[1]  The Agent Contracts also obligated Kirsh to repay any "unearned" commissions, service fees, or agency compensation he received in the event that American General, for any reason, returned the premiums on the policies he sold to the policy owners.[2]

In 2001, Kirsh sold two American General whole life insurance policies to Susan Alter and Gerald Schreck (collectively, the "Policies").  The Policies had a combined death benefit of approximately $11 million and an effective date of November 1, 2001.  American General paid Kirsh $283,311.94 in commissions plus overrides on each policy for a total of $566,623.88.

---

[1] The relevant portions of the Agent Contract and the Master General Agent Contract are nearly identical.

[2] Section 4.7 of the Agent Contract, titled "Repayment of Commissions and Service Fees," states that "[Kirsh] agrees to repay to [American General] on demand, any unearned commissions or service fees received by [Kirsh] for, or with respect to, premiums or payments returned to policy or contract owners by [American General] for any reason."  Likewise, Section 4.6 of the Master General Agent Contract, titled "Repayment of Compensation," states that "[Kirsh] agrees to repay to [American General] on demand any unearned agency compensation or any agency compensation received by [Kirsh] for, or with respect to, premiums or payments returned to policy or contract owners by [American General] for any reason."

2

Before paying Kirsh's commissions, American General sent Kirsh two "Change of Plan to Term Insurance Endorsement Compensation Adjustment Agreements" ("CPTI Agreements"), which applied to the Policies. The CPTI Agreements altered Kirsh's commission repayment obligation and listed a commission chargeback schedule that would apply if Alter and Schreck exchanged their whole insurance policies for term insurance policies "pursuant to" a "Change of Plan to Term Insurance Endorsement" (the "Endorsement"). Specifically, the CPTI Agreement obligated Kirsh to repay 100% of his commissions on the Policies if Alter and Schreck exercised the Endorsement within three policy years, 75% if they exercised the Endorsement within the fourth, and 50% if they exercised the Endorsement within the fifth. The CPTI Agreement provided that American General could not recover any commissions paid to Kirsh if Alter and Schreck exercised the Endorsement after the fifth policy year.

Alter and Schreck paid premiums on their policies for the first three years. During the third year, Alter and Schreck attempted to cancel their policies and "get their money back." When they tried to contact Kirsh, however, he avoided them. Following the third year, Alter and Schreck failed to pay their premiums, and in September 2005, American General cancelled their policies, which entitled it to retain all of Alter and Schreck's payments. After American General cancelled their policies, Alter and Schreck directly contacted American General.

In her deposition, Alter testified that Kirsh promised that, under the terms of their life insurance policies, they would "always" be able to get their initial investment back and that their money was "never at risk." This was untrue under the terms of their policies. Alter also testified that they attempted to refund their money within the first three policy years, but failed to do so because Kirsh avoided them. Kirsh does not refute this evidence in his pleadings or with other evidence of his own.

No. 09-20403

On December 30, 2005, Alter and Schreck entered into a "Settlement and Release Agreement" (the "Settlement Agreement") with American General. The Settlement Agreement permitted Alter and Schreck to exercise the Endorsement as of November 1, 2004, thus retroactively changing their whole policies to term policies. American General refunded Alter and Schreck the premiums they paid up to November 1, 2004, minus the premiums they would have paid had they purchased term policies instead of whole policies from the outset.

After returning Alter and Schreck's premiums, American General demanded that Kirsh repay 100% of the commissions he received for the sale of the Policies. Upon Kirsh's refusal, American General filed suit and withheld Kirsh's commissions from his sale of other policies. Kirsh filed a counterclaim, alleging that American General breached its employment contract with Kirsh by withholding the unrelated commissions.

American General filed a motion for summary judgment as to its claims against Kirsh and as to Kirsh's counterclaim. The district court granted the motion, finding that the CPTI Agreements supplemented, rather than replaced, the Agent Contracts, and that both unambiguously established the circumstances giving rise to Kirsh's repayment obligations. It also found that the Settlement Agreement allowed Alter and Schreck to exercise the Endorsement effective November 1, 2004, and that Kirsh failed to provide evidence that they either failed to do so or that they did so on any other date. After finding that Kirsh failed to repay his commissions despite his contractual obligation to do so, the district court granted summary judgment in favor of American General and awarded $676,878.89, which included $487,200.24 in actual damages,[3] $36,640.13 in prejudgment interest, $101,451.68 in attorneys'

---

[3] This figure represents 100% of the commissions American General paid Kirsh for the sale of the Policies ($566,623.88) less the amount it had previously recouped from Kirsh ($79,423.64).

No. 09-20403

fees, $45,000.00 in attorneys' fees for an appeal before this Court, and $6,586.84 in costs.  Kirsh timely appealed.[4]

## II.  STANDARD OF REVIEW

"We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010) (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270 (5th Cir. 2008)).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c). "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

We review the district court's evidentiary rulings for abuse of discretion. *Goodman v. Harris County*, 571 F.3d 388, 393 (5th Cir. 2009).  We will "'reverse a district court's ruling only if it affects a substantial right of a party.'"  *Id*. (quoting *Caparotta v. Entergy Corp.*, 168 F.3d 754, 755–56 (5th Cir. 1999)).

## III.  ANALYSIS

Kirsh's employment contracts are governed by Texas law.  Under Texas law, "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

---

[4] The district court also granted summary judgment in favor of American General on Kirsh's counterclaim, finding that Kirsh's employment contract explicitly provided that he would forfeit all rights to compensation acquired under any contract with American General if, upon American General's demand, he withheld any property belonging to it after it returned premiums to a policy owner.  Kirsh does not appeal this judgment.

plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)) (alteration in original). The district court found, as a matter of law, that Kirsh's failure to repay his commissions to American General constituted a breach of his employment contract.

On appeal, Kirsh advances several arguments. With regard to whether he breached a contractual obligation, Kirsh argues that (1) Alter and Schreck did not exchange their whole life policies for term life policies, and thus his obligation to repay his commissions under the CPTI Agreement never arose; (2) even if Alter and Schreck wished to exchange their policies, American General and Alter and Schreck failed to satisfy all the conditions precedent to exercise the Endorsement, and therefore his obligation to repay his commissions upon American General's repayment of premiums "pursuant to the Endorsement" never arose; (3) American General has not, as a matter of law, established that it properly attached the Endorsement to the Policies; and (4) the CPTI Agreements superceded the Agent Contracts, and thus American General could not recover under those previous agreements. In the alternative, Kirsh argues that if an exchange from whole to term policies took place, it took place in policy year five, which entitles American General to recover only 50% of his commissions. Finally, Kirsh argues that the district court erred by overruling his objection to American General's summary judgment evidence.

A.    **Breach of Contract**

The Endorsement, an agreement between American General and Alter and Schreck, provides that "[t]he plan of insurance may be changed to a term insurance plan as of the original Date of Issue," so long as Alter and Schreck satisfy certain conditions. Additionally, the Endorsement states "[t]his endorsement has been added to and made a part of the policy to which it is

attached." The CPTI Agreement between Kirsh and American General states that if Alter and Schreck exchange their plan of insurance "pursuant to the Endorsement," then Kirsh must repay 100% of his commissions if the exchange occurs within the first three policy years, 75% if it occurs during the fourth, and 50% if it occurs during the fifth.

### 1. Exchange of Policies

Kirsh first argues that Alter and Schreck never actually exchanged their whole life insurance policies for term policies.[5] He cites Alter's testimony that she sought to cancel—not exchange—the policy she bought from American General, and that American General never discussed exchanging her policy at any time. Without this exchange, Kirsh argues that his obligation to repay the commissions he made on the sale never arose.

Kirsh's argument on this point lacks merit. In front of the district court, Kirsh acknowledged that, in the Settlement Agreement, American General subtracted from the refund the amount of premiums that Alter and Schreck would have paid had they purchased term insurance from the outset. The Endorsement allowed Alter and Schreck to change their plan "to a term insurance plan as of the original *Date of Issue*," and nothing in the Endorsement requires Alter and Schreck to maintain a policy with American General to effect the exchange. (emphasis added). In other words, the Settlement Agreement memorialized a retroactive exchange from whole to term policies, which the Endorsement permitted, if not contemplated. We therefore find that Alter and Schreck exchanged, rather than canceled, their policies.[6]

---

[5] Kirsh makes a remark that American General could not legally issue term insurance to Alter and Schreck because American General is not licensed to issue policies in New York. This argument is baseless. American General owns U.S. Life Insurance Company in the City of New York. The district court took judicial notice of this fact, and did not err by doing so.

[6] We are not persuaded by Kirsh's argument that the Settlement Agreement only "permitted" Alter and Schreck to exercise the Endorsement, and that there exists no evidence

No. 09-20403

## 2.    Conditions Precedent to the Exchange

Kirsh next argues that even if Alter and Schreck wished to exchange their policies to term insurance, the Endorsement subjected their right to do so to several conditions.  Kirsh, however, was not a party to the Endorsement, and thus has no standing to insist that the parties strictly comply with the terms. *See Sterling Colo. Agency, Inc. v. Sterling Ins. Co.*, 266 F.2d 472, 474 (10th Cir. 1959)  (explaining that an insurance agent "is not a third party beneficiary under the policy nor in direct privity through the insuring contract").  Because the Endorsement conditions benefitted American General as the insurer, it was at liberty to waive them. *See Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex. App.—Dallas 1998, no writ).  American General allowed Alter and Schreck to exercise the Endorsement; thus the exchange took place "pursuant to the Endorsement," which in turn gave rise to Kirsh's repayment obligation under the CPTI Agreement.

## 3.    Attachment of the Endorsement

Kirsh next argues that American General provided no evidence that it ever attached the Endorsement to the Policies.  Kirsh contends that failure to attach the Endorsement prevented it from becoming part of the Policies, making it impossible for Alter and Schreck to have exchanged their policies "pursuant to" the Endorsement.  Thus, Kirsh argues that this failure defeats any obligation on his part to return commissions under the CPTI Agreement.

Kirsh's argument on this point lacks merit.  The Supreme Court of Texas has held that "[a]ll endorsements agreed to by the contracting parties should be

---

that they actually did so.  The Settlement Agreement states that, "[p]ursuant to the terms of the Endorsement, American General shall pay to" Alter and Schreck the difference between the cost of whole and term insurance for the years in question.  It is clear that the parties crafted the Settlement Agreement because Alter and Schreck were, in fact, exercising the Endorsement, and not simply to show that American General would permit them to do so.

8

attached to insurance policies, but failure to attach them does not invalidate them." *Fidelity Union Life Ins. Co. v. Methven*, 346 S.W.2d 797, 800 (Tex. 1961). Therefore, American General's alleged failure to attach the Endorsement is irrelevant. American General made the Endorsement a part of the Policies, and when Alter and Schreck exercised it through the Settlement Agreement, Kirsh's obligation to repay the commissions American General paid on the sales of the Policies arose.

### 4.   The CPTI Agreement's Effect on the Agent Contracts

Kirsh argues that the CPTI Agreement entirely superceded the Agent Contracts, which provide that Kirsh must repay, "on demand, any unearned commissions or service fees received by [Kirsh] for, or with respect to, premiums or payments returned to policy or contract owners by [American General] for any reason." Having argued that no commissions repayment obligation arose from the CPTI Agreements, Kirsh contends that because the CPTI Agreements superceded the Agent Contracts, no commissions repayment obligation could have arisen from the Agent Contracts either. Because we hold that Kirsh's repayment obligation arose under the CPTI Agreements, we do not address this issue.

### B.   Date of Execution of the Endorsement

Kirsh also argues that in the event we find that the CPTI Agreement obligated him to repay the commissions American General paid him on the sale of the Policies, the district court erred by not limiting American General's recovery to 50% of his commissions. He cites the CPTI Agreement's provisions, which provide that he must repay 100% of his commissions on the Policies if Alter and Schreck exercise the Endorsement within the first three policy years, 75% if they do so in the fourth, and 50% if they do so in the fifth. He contends that the relevant events—namely the signing and funding of the Settlement Agreement—did not occur until policy year five.

The district court did not err when it found that Kirsh owed American General 100% of the commissions on the Policies.  The CPTI Agreement states "if the plan of insurance is *exchanged*, pursuant to the Endorsement," then the CPTI Agreement's staggered chargeback schedule applies.  (emphasis added).  The Settlement Agreement states that "American General agrees to permit [Alter and Schreck] to exercise the Policies' respective [Endorsements] as of November 1, 2004."  The parties to the Settlement Agreement apparently did not choose this date arbitrarily; rather, it corresponds with the date on which Alter and Schreck stopped paying the premiums on their policies.

Nothing in the CPTI Agreement ties Kirsh's obligation to repay the commissions from the sale of the Policies to the date that American General and Alter and Schreck executed the Settlement Agreement or discontinued their relationship.  We find that Alter and Schreck exercised the CPTI Agreement effective November 1, 2004, and because this date falls within policy year three, the district court did not err when it held that Kirsh owes American General 100% of his commissions on the sales.[7]

C.    **Summary Judgment Evidence**

Kirsh also argues that the district court erred when it overruled his objections to evidence filed by American General in support of its motion for summary judgment.  Kirsh specifically takes issue with the testimony of Mark Childs, American General's designated Rule 30(b)(6) representative, who testified that Kirsh's commissions became "unearned" when American General had to repay Alter and Schreck's premiums.  He contends that Childs's

---

[7] Kirsh's argument that November 1, 2004 falls within policy year four also lacks merit. Connecticut law governs the Policies, and provides that "where a period of time is to be calculated from a particular date or event, the day of such date or event is excluded from the computation." *Comm'r Transp. v. Kahn*, 811 A.2d 693, 698 (Conn. 2003) (citation omitted). Therefore, because the Policies had an effective date of November 1, 2001, November 1, 2004 still fell within policy year three.

No. 09-20403

testimony incorrectly stated the law, invaded the district court's province to decide legal issues, and was factually conclusory.

Kirsh's arguments regarding "earned" versus "unearned" commissions relate to the language in the Agent Contracts, which obligates Kirsh to repay, "on demand any unearned agency compensation or any agency compensation received . . . for, or with respect to, premiums or payments returned to policy or contract owners by" American General.  We have held, however, that Kirsh's repayment obligations arose from the CPTI Agreement, and not from the Agent Contracts.  We therefore do not address this issue except to note that our adjudication of this case on other grounds renders harmless any alleged error in admitting this testimony.  *See Goodman*, 571 F.3d at 393 (stating that the court will reverse a district court's evidentiary ruling "only if it affects a substantial right of a party") (citation and internal quotation marks omitted).

## IV.  CONCLUSION

The district court did not err when it found that Alter and Schreck exercised the Endorsement, which gave rise to Kirsh's obligation to repay his commissions from the sale of the Policies to American General. Additionally, the district court did not err when it found that the exchange took place within policy year three, obligating Kirsh to repay 100% of his commissions. Therefore, we affirm the district court's grant of summary judgment in favor of American General.

AFFIRMED.