# IN THE SUPREME COURT OF TEXAS

No. 20-0075

IN RE USAA GENERAL INDEMNITY COMPANY, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**Argued December 2, 2020**

JUSTICE GUZMAN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE BOYD, JUSTICE DEVINE, JUSTICE BLACKLOCK, JUSTICE BUSBY, and JUSTICE HUDDLE joined.

JUSTICE BLAND filed a dissenting opinion, in which JUSTICE LEHRMANN joined.

Under a standard Texas automobile insurance policy, an insured seeking underinsured motorist (UIM) benefits may pursue a variety of options: (1) sue the insurer directly to establish the motorist's fault and the insured's damages without suing the motorist; (2) sue the underinsured motorist with the insurer's written consent, making the negligence judgment binding against the insurer for purposes of the insurer's liability under the UIM policy; or (3) sue the underinsured motorist without the insurer's written consent and then relitigate the issues of liability and damages in a suit for benefits under the UIM policy. The consent requirement protects the insurer from being bound to a default judgment or an inadequate defense by the underinsured motorist, leaving it to the insurer to determine whether to rely on the motorist's defense. In this original proceeding, the insurer declined to participate in the jury trial to establish the motorist's liability and demanded a separate trial on its liability under the UIM policy. After the insured's negligence suit against an

at-fault motorist settled and the claim had been dismissed without rendition of judgment on the jury's verdict, the insurer consented to be bound to a judgment on the negligence verdict. Arguing the jury verdict and settlement payment collectively negate its liability to the insured for UIM benefits, the insurer seeks a writ of mandamus compelling the trial court to render judgment in its favor on the jury's verdict.

We deny the writ. The trial court did not abuse its discretion in declining to render judgment on the verdict for at least two reasons: (1) collateral estoppel does not bind the insured to a verdict that was not reduced to judgment; and (2) the insurer's post-dismissal consent to be bound by the negligence suit's outcome does not make the negligence verdict enforceable against the insured in the contract suit. The motorist's settlement and dismissal of the negligence suit without a judgment rendered the verdict unenforceable between the insured and the motorist, as if the verdict had never been reached. And while the insurer may want to bind itself to the verdict, consenting to the suit does not put the insurer in a better position with respect to the verdict than its litigation surrogate. The insurer can no more bind its insured to the verdict than could the motorist against whom it was rendered. Accordingly, the damages to which the insured is legally entitled remain to be determined in the UIM suit.

## I. Background

After sustaining injuries in a rear-end collision, Adam Reising sued Sue Ann Baldor for negligence damages substantially in excess of Baldor's $30,000 insurance-policy limits. Because Baldor's liability-policy limits would not fully cover his asserted losses, he added a claim against his automobile insurer, USAA General Indemnity Company (USAA), for UIM benefits.

Reising's UIM policy pays benefits up to policy limits if an at-fault motorist's liability insurance is insufficient to cover his actual damages. The policy provides, however, that "[a]ny

2

judgment of damages arising out of a suit brought without [USAA's] written consent is not binding on [USAA]." USAA did not consent to Reising's suit against Baldor and, instead, demanded a jury trial on Reising's UIM claim. Because USAA did not agree to have its policy liability determined in the Baldor trial, Reising was required to litigate Baldor's negligence and his damages in a separate trial with USAA.

To avoid injecting potentially prejudicial insurance issues into Baldor's negligence trial, Baldor moved for a bifurcated trial and abatement of Reising's UIM claim.[1] USAA assented to Baldor's motion, which the trial court granted in an order stating:

> [A]ll [Reising's] causes of action against [USAA] are hereby abated and bifurcated. The abatement will be lifted upon agreement of the parties at the conclusion of the underlying trial or upon Order of the Court. Further, the trial date for the bifurcated claims will be agreed upon between the parties.[2]

With Reising's UIM claim abated, the court commenced a jury trial on Reising's negligence claim against Baldor. The jury found Baldor 100% at fault and awarded Reising $160,000 in damages, which was much less than the actual damages Reising claims to have suffered. After the jury was dismissed, and before the verdict was reduced to a judgment, Reising and Baldor agreed to settle the claim for approximately the amount of the jury verdict in forbearance of further trial and appellate proceedings between them.

In accordance with the UIM policy's terms, Reising's counsel advised USAA in writing that Reising and Baldor had agreed to a settlement and requested USAA's permission to settle.

---

[1] *See In re Reynolds*, 369 S.W.3d 638, 654 (Tex. App.—Tyler 2012, orig. proceeding) (holding severance is proper to avoid injecting potentially prejudicial issues into the negligence suit).

[2] While the agreed motion and trial court's order refer to bifurcation, the trial court's order did not separate the case into two trial phases before the same jury. Rather, the trial court ordered separate trials, and by virtue of the abatement, USAA was not a participant in the trial proceedings, and could not act in those proceedings, until the abatement was lifted. *See infra* p. 12 and note 29.

3

USAA did not respond to Reising's initial letter or a follow-up request, but with the trial court's approval, Reising and Baldor consummated the settlement, which Baldor's insurer fully funded despite her policy's much lower coverage limits.[3] After the court had issued an order dismissing the suit against Baldor with prejudice, USAA sent Reising's counsel a letter consenting to the suit against Baldor.

The next day, the trial court reinstated Reising's UIM suit against USAA and set a trial date. USAA responded with a motion for judgment based on the jury verdict from the Baldor trial. USAA asserted that a separate trial on the UIM claim was no longer necessary because Baldor's insurer settled the negligence claim against her by paying Reising $161,114.79, the full amount of damages the jury had awarded plus court costs. USAA argued that the jury's findings, coupled with the settlement payment, conclusively established that Baldor was not underinsured or, in the alternative, that Reising had no uncompensated losses.[4]

Reising opposed the motion. He argued that USAA was not entitled to judgment on the Baldor jury verdict because the insurer had not consented to be bound to any aspect of the Baldor trial, including the jury verdict, until the negligence claim had been dismissed without rendition of judgment. Rather, in lieu of consenting to Baldor's representation of its interests, USAA had agreed to abatement of the UIM claim and insisted on a separate trial to establish its liability for UIM benefits. Reising further disputed that his settlement with Baldor was limited to damages

---

[3] The record does not disclose the insurer's reason for paying significantly over and above Baldor's policy limits.

[4] While USAA acknowledges it could still bear liability for some amount of prejudgment interest, it asserts that sum could be calculated without the necessity of a new trial. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 811, 815-17 (Tex. 2006).

and court costs, noting the settlement agreement also precluded him from moving for a new trial, appealing the verdict, or pursuing any other post-trial procedural matters.

After a hearing on the matter, the trial court summarily denied USAA's motion. The court of appeals also summarily denied USAA's petition for a writ of mandamus to compel the trial court to render judgment on the Baldor verdict.

## II. Discussion

Mandamus relief is appropriate when the relator demonstrates a clear abuse of discretion and has no adequate remedy by appeal.[5] USAA argues mandamus is appropriate here because (1) the trial court refused to perform the purely ministerial act of rendering judgment on the jury's verdict and (2) the court's clear error cannot be adequately rectified on appeal from an unnecessary and costly separate trial.

As in the proceedings below, USAA contends it timely consented to be bound by the Baldor trial's outcome and a take-nothing judgment on the UIM claim is required because the Baldor jury verdict and settlement establish that Reising has been compensated for all the damages the Baldor jury awarded. Further, and without regard to timeliness of consent to be bound, USAA asserts that Reising is collaterally estopped from relitigating Baldor's negligence and his damages. We hold USAA is not entitled to judgment on either of these bases.

### A. Collateral Estoppel

"The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent *judgments* by

---

[5] *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding); *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

5

precluding the relitigation of issues."[6]  Collateral estoppel bars relitigation of an issue if a party seeking the benefit of a judgment proves "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were *essential to the judgment* in the first action; and (3) the parties were cast as adversaries in the first action."[7]  When properly pleaded and proved in a UIM case, collateral estoppel prevents an insured from relitigating a motorist's negligence and the insured's resulting damages if a judgment in the insured's case against the motorist has finally determined those issues.[8]

As USAA observes, the court of appeals in *Forbis v. Trinity Universal Insurance Co. of Kansas, Inc.* applied the collateral estoppel doctrine to preclude relitigation of the amount of damages an at-fault motorist caused after the insured's survivor and the motorist had settled.[9]  But *Forbis* is materially distinguishable because the trial court entered the settlement as an agreed judgment, which had become final.[10]  That being the case, the final judgment established the amount of the survivor's damages and precluded her from relitigating that issue in a subsequent suit against the UIM insurer.[11]  Unlike *Forbis*, the essential requirement of a final judgment is

---

[6] *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (emphasis added).

[7] *Id.* (emphasis added); *see also Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) (noting that collateral estoppel "precludes the relitigation of identical issues of facts or law that were actually litigated and *essential to the judgment* in a prior suit" (emphasis added)).

[8] *See Rexrode v. Bazar*, 937 S.W.2d 614, 620 (Tex. App.—Amarillo 1997, no writ); *Forbis v. Trinity Universal Ins. Co. of Kan., Inc.*, 833 S.W.2d 316, 319 (Tex. App.—Fort Worth 1992, writ dism'd).

[9] 833 S.W.2d at 319.

[10] *Id.* (holding survivor of UIM policyholder was collaterally estopped from relitigating damages because she entered into an agreed judgment with the negligent driver establishing her damages).

[11] *Id.*

lacking here.[12]  To the extent the dismissal with prejudice functioned as a sort of judgment, as the dissent suggests,[13] it has not become final.  Because there is no final judgment, collateral estoppel is inapplicable here.[14]

## B. USAA's Consent to be Bound

USAA's post-dismissal consent to be bound by the Baldor trial's outcome likewise does not entitle it to judgment on the Baldor verdict.  An underinsured motorist is one whose liability insurance is insufficient to cover the injured party's actual damages.[15]  A UIM insurer has a contractual duty to pay its insured the difference between the damages the insured is "legally entitled to recover" from an at-fault motorist and the amount recovered or recoverable from the motorist's insurer.[16]

"Legally entitled to recover," a term of art in the UIM context, "means the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the

---

[12] *See Starnes v. Holloway*, 779 S.W.2d 86, 93 (Tex. App.—Dallas 1989, writ denied) ("Application of collateral estoppel . . . requires that there be a final judgment." (citations omitted)); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 595 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[B]oth collateral estoppel and res judicata require a final judgment." (citing *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991))).

[13] *See post* at 5.  The dissent argues the dismissal *was* a judgment, but concedes, as it must, that collateral estoppel does not apply because there is no final judgment.  *Id*. at 7.

[14] Because we conclude collateral estoppel is inapplicable here, we need not consider Reising's argument that USAA waived this affirmative defense by failing to plead and prove it.  *See Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 882 n.3 (Tex. 2020) ("Collateral estoppel is an affirmative defense that must be pleaded unless tried by consent. Because the Hurtados raised collateral estoppel for the first time at a summary judgment hearing and said nothing in writing on the matter until their appellate briefing, they forfeited the defense." (internal citations omitted)).

[15] *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 380 (Tex. 1989).

[16] *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 815 (Tex. 2006) (discussing *Henson v. S. Farm Bureau Cas. Ins. Co*., 17 S.W.3d 652, 653 (Tex. 2000)); *see also* TEX. INS. CODE § 1952.106 ("[UIM] coverage must provide for payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.").

liability and underinsured status of the other motorist."[17]  A jury announces its decision with its

verdict,[18] but the resulting judgment, not the verdict, confers enforceable legal rights.[19]  Integral

to the distinction is the trial court's ability to determine whether the verdict is proper and supported

by evidence before rendering judgment.  In making those determinations, a trial court can render

judgment notwithstanding the verdict,[20] disregard an unsupported jury finding,[21] or grant a new

trial.[22]  Thus, to ensure the determination's finality and provide adequate procedural protections

for both the insured and the insurer, the judgment—not the verdict—establishes the amount an

insured is "legally entitled to recover" for purposes of calculating UIM benefits.[23]

---

[17] *Brainard*, 216 S.W.3d at 818.

[18] *See* TEX. R. CIV. P. 290 ("A verdict is a written declaration by a jury of its decision . . . ."); *Verdict*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining verdict as "[a] jury's finding or decision on the factual issues of a case").

[19] *See* TEX. R. CIV. P. 301 ("The judgment of the court . . . shall be so framed as to give the party all the relief to which he may be entitled either in law or equity."); TEX. R. CIV. P. 308 ("The court shall cause its judgments and decrees to be carried into execution . . . ."); *Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining judgment as "[a] court's final determination of the rights and obligations of the parties in a case"); *see generally Smith v. McCool*, 83 U.S. 560, 561 (1872) ("To give efficacy to a verdict, general or special, it must be followed by a judgment, and when offered to establish any fact, such fact must have constituted, in whole or in part, the foundation of the judgment which was rendered."); *Pullin v. Parrish*, 306 S.W.2d 241, 242 (Tex. Civ. App.—San Antonio 1957, writ ref'd) ("[A] verdict is not a judgment.  Judgments, not verdicts, record the final decisions of courts.").

[20] TEX. R. CIV. P. 301 ("[U]pon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence.").

[21] *Id.*

[22] TEX. R. CIV. P. 320 ("[O]n motion or on the court's own motion[,] . . . [n]ew trials may be granted when the damages are manifestly too small or too large.").

[23] *See, e.g.*, *Allstate Ins. Co. v. Irwin*, 606 S.W.3d 774, 777 (Tex. App.—San Antonio 2019, pet. granted) ("Absent a judgment establishing the other motorist's liability and damages, a UM/UIM carrier has no contractual duty to pay benefits."); *Liberty Mut. Ins. Co. v. Sims*, No. 12-14-00123-CV, 2015 WL 7770166, at *2 (Tex. App.—Tyler Dec. 3, 2015, pet. denied) (mem. op.) ("The UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment . . . ."); *Mid-Century Ins. Co. of Tex. v. McLain*, No. 11-08-00097-CV, 2010 WL 851407, at *2 (Tex. App.—Eastland Mar. 11, 2010, no pet.) (mem. op.) ("The UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment . . . ."); *Stoyer v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1376-K, 2009 WL 464971, at *2 (N.D. Tex. Feb. 24, 2009) ("Texas state law requires a judgment . . . ."); *cf. Blevins v. State Farm Mut. Auto. Ins. Co.*, No. 02-17-00276-CV, 2018 WL 5993445, at *15 (Tex. App.—Fort Worth Nov. 15, 2018,

An insured obtains the requisite judgment from either a suit between the insured and the motorist to which the insurer consented or a suit in which the insured litigates the motorist's negligence directly against the insurer.[24] The wrinkle here is that, following a jury trial on the insured's claim against the motorist, the negligence claim settled and the court dismissed the suit against the motorist without rendering judgment on the jury verdict, leaving no judgment establishing the amount Reising is legally entitled to recover from Baldor to which USAA could consent. After the suit had been dismissed, USAA viewed the jury's adverse verdict favorably because of the parties' pre-judgment settlement. USAA therefore purported to consent to the negligence verdict and moved for judgment on it with respect to Reising's contract claim. USAA frames "[t]he key question [as] whether [it] is barred from consenting to be bound after the jury in the negligence trial reached a verdict." But we need not decide whether USAA could choose to bind itself after the jury returned a verdict because USAA's consent, even if timely, does not entitle it to judgment on the verdict. USAA may desire to bind itself but that does not make the verdict binding on Reising.

The consent requirement in the UIM policy protects the insurer from a default judgment or an inadequate defense by the underinsured motorist.[25] A consenting insurer forfeits that protection

---

no pet.) (mem. op.) ("[I]t is for the trial court, not the jury, to decide what sorts of damages a litigant is legally entitled to recover.").

[24] *See In re Koehn*, 86 S.W.3d 363, 368 (Tex. App.—Texarkana 2002, orig. proceeding) (articulating the different options an insured has to obtain UIM benefits).

[25] *In re Reynolds*, 369 S.W.3d 638, 655 (Tex. App.—Tyler 2012, orig. proceeding) ("[T]he purpose of requiring the UIM insurer's consent to suit against the UIM is to protect the insurer from liability arising from a default judgment against the UIM or an insubstantial defense by the UIM."); *In re Koehn*, 86 S.W.3d 363, 368 (Tex. App—Texarkana 2002, orig. proceeding) ("One of the purposes of requiring the insurance company's written consent to sue is to allow the insurance company to protect itself from a default judgment taken against the uninsured/underinsured motorist or an insubstantial defense by the uninsured/underinsured motorist.").

altogether, as USAA purported to do here, and binds itself to the negligence suit's outcome, not merely the portions beneficial to it. If the suit's outcome is a judgment establishing the amount of damages the motorist caused the insured, the insurer is bound by that judgment's effect: the damages the insured is legally entitled to recover have been determined. If the outcome is a dismissal prior to any judgment establishing that amount, the insurer is likewise bound by the dismissal's effect: the damages the insured is legally entitled to recover have not been determined.

A party's pre-judgment agreed dismissal has the same effect on a verdict against that party as a new trial order—it makes the verdict unenforceable.[26] USAA, as a stranger to the verdict, cannot revive the verdict reached without its participation by consenting to the Baldor trial post-dismissal. Rather, its consent caused it to be bound by the outcome—a dismissal—to the same extent as Baldor, its putative litigation surrogate. Because the dismissal made the verdict unenforceable, the damages Reising is legally entitled to recover from Baldor remain to be determined in the separate UIM trial USAA demanded and the trial court ordered.[27] In short,

---

[26] *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 212 (Tex. 2009) (orig. proceeding) (noting that when the trial court grants a new trial, "the prevailing party loses the jury verdict"); *Crofts v. Ct. of Civil Appeals for Eighth Supreme Judicial Dist.*, 362 S.W.2d 101, 104 (Tex. 1962) (orig. proceeding) ("It is elementary that a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought."). Although a dismissal with prejudice, unlike one without, prevents relitigation of the same claim against the same party, it does not follow that a verdict remains enforceable after such a dismissal.

[27] In arriving at the opposite conclusion, the dissent not only relies on collateral estoppel principles, which it concedes are inapplicable, but also fails to appreciate the distinctive nature of UIM litigation. Absent a judgment establishing the motorist's liability and the amount of the insured's damages, insureds are permitted to try those issues directly against the insurer, regardless of whether they can or want to sue the motorist. Even assuming the dismissal functioned as a judgment, as the dissent does, that judgment established only that Reising cannot bring another negligence claim against Baldor based on the accident. If the dissent were correct that the dismissal established Reising is "legally entitled to recover" nothing from Baldor for purposes of determining USAA's UIM liability, insureds could never settle and dismiss their claims against underinsured motorists without eviscerating the contractual right to recover from their own insurer any unrecovered actual damages within policy limits. *Cf. Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 808 (Tex. 1980) (holding settlement with, and release of claim against, tortfeasor did not bar plaintiff from pursuing respondeat superior claim against tortfeasor's employer for same automobile accident).

consent is not piecemeal—if you're in for a penny, you're in for a pound. Whether USAA's post-dismissal consent to the Baldor suit was timely is disputed but ultimately immaterial because USAA cannot bind Reising to an unenforceable jury verdict.

Mandamus relief is not appropriate absent a clear abuse of discretion,[28] yet the dissent would grant extraordinary relief here despite an inability to identify any authority compelling rendition of judgment on a verdict from a separate trial that was dismissed while the claim against the relator was under abatement and to which the relator was not a participant. The best the dissent can offer is to string together a series of inapt analogies to Mary Carter agreements, bifurcated phases of a single trial as opposed to separate trials, and cases in which judgment was rendered for parties who participated in the trial.

The dissent's main thrust is that this case is procedurally indistinguishable from a bifurcated trial on actual damages and, if necessary, exemplary damages. But the truism that the findings in the first phase of a bifurcated trial can preclude the second is a red herring. A bifurcated trial is *one trial* in which one jury decides multiple questions in different phases.[29] Although the trial court used the term "bifurcated," the trial court did not order one trial in which the first phase

---

[28] *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding); *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

[29] *See In re Reynolds*, 369 S.W.3d at 654. The dissent disagrees, citing a dictionary definition of "bifurcate[.]" *See post* at 7. Of course, dictionary definitions do not trump Texas precedent on an issue of Texas law. But regardless, what matters here is not the word the trial court used but what actually happened. And on that score, there is an important difference between one trial and multiple trials. The general definition of "bifurcate" the dissent cites contemplates any type of bifurcation: "To separate into two parts, esp[ecially] for convenience . . . Multiple aspects of litigation, such as discovery, motions, defenses, trial, and jury deliberations, may be bifurcated to save time, reduce jury confusion, or achieve other benefits, with or without the same jury hearing both bifurcated parts." *Bifurcate*, BLACK'S LAW DICTIONARY (11th ed. 2019). The more specific definition of "bifurcated trial"—the type to which the dissent purports to analogize—is "[a] trial that is divided into two stages, such as for guilt and punishment or for liability and damages." *Bifurcated trial*, BLACK'S LAW DICTIONARY (11th ed. 2019). To the extent the former does not, this latter definition clearly contemplates one trial.

11

would determine the liability and damages issues as to all parties. Whether termed as bifurcated *trials* or as separate *trials*, the trial court ordered two trials, each of which would involve a separate jury deciding the negligence issues, as necessitated by USAA's demand for its own jury trial.[30] While citing a case involving a single bifurcated trial[31] and specifically noting that "[t]he hallmark of bifurcation is that the second phase of *the trial* is dependent on the resolution of the first[,]"[32] the dissent consciously ignores this critical procedural fact to anchor a faulty analysis.[33]

The dissent also veers off into other matters that are equally inapposite, invoking the "collusion" boogeyman and implying the trial court had no authority to allow a dismissal in the first trial once the jury rendered its verdict. The settlement here—one USAA enthusiastically embraces—is not akin to a Mary Carter agreement. Public policy disfavors such agreements because they result in unfair trials by providing economic incentives for a defendant to assist in maximizing the plaintiff's recovery against other defendants, skewing both presentation of the merits and the outcome.[34] Lacking any evidence of collusion, the dissent is forced to concede that

---

[30] The order stated: "The abatement will be lifted upon agreement of the parties at the conclusion of the underlying trial or upon Order of the Court. Further, the trial date for the bifurcated claims will be agreed upon between the parties."

[31] *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994) ("If the jury answers the punitive damage liability question in the plaintiff's favor, *the same jury* is then presented evidence relevant only to the amount of punitive damages, and determines the proper amount of punitive damages, considering the totality of the evidence presented at both phases of *the trial*." (emphases added)).

[32] *Post* at 8 (emphasis added).

[33] The dissent even cites a case further highlighting the distinction. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (holding that the findings in the first of two separate trials did not preclude the second trial).

[34] *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 709 (Tex. 1996) ("A Mary Carter agreement is any settlement arrangement between the plaintiff and some of the defendants in a case by which the settling defendants agree to pay the plaintiff a certain amount of money and to participate in the trial against the nonsettling defendants, and the plaintiff agrees to release the settling defendants from liability and, if the judgment against a nonsettling defendant is large enough, to repay the settlement amount.").

"Baldor has no financial interest in Reising's recovery against USAA."[35]  Rather, the dissent

complains that by settling, Baldor now has "no incentive to resist"[36] in the suit against USAA.  But

that circumstance does not distinguish this case from any other UIM case in which the insured tries

the negligence case against the motorist without the insurer's consent and then subsequently

litigates the negligence case against the insurer.[37]  Nor is it distinguishable from any other case in

which the insured chose not to sue the motorist within the two-year statute of limitations.  And it

is no different than any other case in which a witness has no skin in the game.  The dissent's

hyperbole belies the reality that UIM suits often involve motorists who have no incentive to assist

the UIM insurer.  Indifference is not equivalent to collusion.

Most importantly, this is not a case in which a party that participated in a jury trial was

denied judgment on the verdict reached in that trial.  Arguing that only nonsuits pursuant to Texas

Rule of Civil Procedure 162—dismissals that are necessarily pre-verdict—can nullify

pre-dismissal proceedings and thus the agreed dismissal here did not render the verdict

unenforceable,[38] the dissent cites *O'Brien v. Stanzel*[39] for the proposition that "late-in-the-game

nonsuits do not prevent judgments vis-à-vis other parties to the suit[.]"[40]  As *O'Brien* expressly

acknowledges, in some situations, "a trial court may exercise discretion [to grant a dismissal] even

---

[35] *Post* at 8.

[36] *Id.* (emphasis omitted).

[37] Indeed, as noted, the purpose of the policy's consent requirement is to permit the insurer to decide whether to align with the motorist by consenting to the motorist's suit.  *See supra* note 25.

[38] *Post* at 11-12.

[39] 603 S.W.2d 826 (Tex. 1980).

[40] *Post* at 11.

though the trial has progressed beyond the rule's point of no return."[41] Such is the case here where, unlike *O'Brien*, all the parties who participated in the jury trial agreed to the dismissal.[42] By failing to mention that USAA could not participate in the trial or oppose the dismissal while the claims against it were abated, the dissent improperly analogizes to a case in which the party seeking judgment participated in the jury trial and opposed the dismissal. Neither Rule 162 nor *O'Brien* prohibited the trial court from granting the agreed dismissal in this case, nor does either support the dissent's view that a verdict remains enforceable after all the parties to it have agreed to dismiss the case.

### III. Conclusion

USAA's consent does not entitle it to judgment on the verdict because collateral estoppel does not apply, and USAA cannot bind Reising to a verdict that is not binding between the parties to it. We deny USAA's petition for writ of mandamus because the trial court did not clearly abuse its discretion in proceeding with the trial USAA demanded to determine its liability under the UIM policy.

_____

Eva M. Guzman
Justice

**OPINION DELIVERED:** May 7, 2021

---

[41] 603 S.W.2d at 828.

[42] *See id.* at 826-27.